whenever you're set up. Thank you. I think it's, as long as it's in the evidence. You may proceed. Good morning, your honors. Good morning. May it please the court. This case arises under Mississippi's due process procedures. And the real question here is whether or not the standards set by Mississippi involving superintendents of schools enable them to have due process law. Secondly, what due process is due superintendents? To begin with, historically, prior to 2012, Mississippi allowed the superintendents to come under one standard, the Education Employment Procedures Law, commonly known as EEPL. Well, that didn't sit too well with many folks because the very same people who hired the superintendent and who made the initial decision to terminate the superintendents also were the ones who would hear the superintendent's appeal. So that created all kinds of problems with respect to a superintendent alleging that his or her due process rights have not been protected. So the state legislature in 2012 decided to change the law. But what happened was when they changed the law, they did not provide any protection for superintendents. As a consequence, superintendents were left out there with no process on the state law when they were terminated or non-renewed that they can look to. In this case- Isn't that up to the legislature whether they want to give process or not to superintendents? It is up to the legislature on the state side, but not on the federal side. And certainly if you look at Latimer, the court said in Latimer, while the state can confer the property interest, it's not up to state law to decide whether or not that person received the process that was due. That's federal law. So it's under the 14th Amendment. Did the state of Mississippi confer a property interest or not in the new amended statute? Not in that particular statute, but in another statute, the state conferred process to these superintendents by saying that they could have up to a four-year contract. And in the statute, the court is referencing 2337-9-59. The state basically said that boards can terminate these superintendents and their contract. And then the legislature went on to say, however, they can no longer have a right to appeal to the board under the EEPL. So are you saying the state statute is unconstitutional? And if so, did you argue that to the district court and in your brief, or are you saying something else? Well, we're not saying it's unconstitutional. We're saying that the board, in this instance, had the power itself to grant the authority. You got a 2-4. You got policies of the board, and you have the legislature. We're saying that in these instances, the very board itself had the authority to adopt and implement a policy to determine whether or not a superintendent get due process. And there was a failure here after 2012 on the part of the board. If the board doesn't have to do it and it's up to the board if it wants to do it, how is that a violation of any law? The violation occurs when there is no due process for the superintendent to look to. There is no process that the superintendent can look to for a remedy. That's the problem. Who conferred the property right interest, then, that the board has to give due process for? Both the state and the local school district. The state said a superintendent may have a contract for up to four years. In this instance, the board had the discretion to decide whether or not you get a one-year contract, two- or four-year contract. In this instance, they said a three-year contract. So both the state and the board conferred the property interest. So your argument, and I want to make sure I'm hearing you correctly, your argument is that the contract with them, which was through 2018, created a property right, a reasonable expectation of continued employment, created a property right or interest in the job. And once that property right is created, then it's entitled to constitutional protection, and then we invoke the 14th Amendment. Is that? That's correct. All right. Did Greenwood School District need good cause to terminate him? I'm sorry? Did they need good cause to terminate him, Mr. Greenwood? They did need good cause. What they did in this instance, they met on the morning of January 4th, 2016, and they came out and said, you're terminated for cause, without an explanation as to what cause meant. At that point, we submit to the court that the failure on the part of Greenwood is this. The superintendent then requested an opportunity to respond to the decision of the board. They didn't give him that opportunity. Had they given him the opportunity to do so in writing and possibly even orally, perhaps we wouldn't be here today, because the argument would then be under the federal, under the 14th Amendment, the court said the process due is maybe a lesser standard than the state standard. Here there's no state standard, so the sole standard is the federal standard. The federal standard says that, one, you've got to give notice. They gave notice, whether it was sufficient or not. They did give notice, cause. Secondly, you've got to tell them what the reasons are that you terminated. They did not do that. And thirdly, you've got to give them an opportunity to respond. Greenwood was never given that opportunity. What kicks that in? What kicks in that federal standard? What kicks in the federal standard in this instance is the failure at all to provide any remedy when you've got a property right. A property right, the Due Process Clause provides that because you have a property right, you cannot take it without due process of law. That kicks in the federal standard. I'm still confused about where the right to not be charged except for cause comes in. Where does that come in? Is that through the contract? And if so, where does the contract say that? The contract does not provide that. The state statute provides that. 37959 provides the cause. It says that you may terminate for good cause, and it provides other reasons for termination. And you don't have to put that in the contract. And I can tell you that because I represented these school districts for many years myself. So you do not have to put that in the contract. However, it has to be, the statute itself provides for that. So that at that point, once you terminate or you make a decision to take adverse action against the superintendent and the superintendent's contract, then the superintendent is entitled to due process of law or at least the opportunity to respond to what you've done. Does it have to be pre-termination, or can it be post-termination under your understanding of the law? My understanding, under Loudermill, it has to be pre-termination. Because they are the final decision-makers prior to an appeal to chancellor's court. But what makes the district, the board, have to decide if it's optional for the board to give a hearing or not? What makes them, why would they want to give a hearing if they're trying to deal with their chief executive and they want to, you said, oh, well, they had the option to give a hearing. Why would a board, you used to represent the board yourself, you said. I don't understand why the board would give a hearing under that circumstance. Your Honor, it's not optional. Oh, I thought you said it was optional. You're saying that. Perhaps you misunderstood me. It's not optional under the federal standard. The federal standards under Loudermill and Rock and all those cases mandates that you give that some kind of hearing. Only if your state statute creates a property interest. And the state statute in this case does create a property interest. Okay. So do you agree with me, though, that if it does not create a property interest, that that federal right does not kick in? I certainly do. Okay. Yes. So what are you seeking here today? We're seeking, we're asking the court to either render a judgment or remand this case for other considerations. What would the rendered judgment be for? A finding that there was a violation of Mr. Green's due process rights. Pre-termination. Pre-termination, yes. Pre-termination due process because you believe he had a property interest in his continued employment. Yes, ma'am. Is it disputed by the other side whether or not he had a property interest? No. All right. I thought it was, that he, because of the change in the state statute. But we'll ask them. They are contending, what their contention is, is that the problem here is that we did not go to chancellery court to appeal the decision that the board made. And we submit there was nothing to appeal primarily because the very statute they talked, that mandates the appeal, would not provide any protection or any remedy for Mr. Green. It's not possible because they did not generate a record. And the appeal is limited to the record itself. The Mississippi courts have consistently held that the chancellors, the scope of review on appeal is limited to that record. There is no record. Why don't you have to go anyway? Because we have cases that say even if you think it's going to be an automatic loss, you still have to exhaust through the process. Even if it's really abundantly clear that you're not going to get a fair shake or whatever, you still have to go through the motions so that we're not federally interfering with the state process before it's exhausted. That's true in many instances. In this instance, however, the exception is when you look at the statute 237-9-113. It limits the scope to a record. And there is no record. And the end result was if the chancellor could not hear any evidence, the chancellor could not decide anything outside the scope of the record, and the chancellor's duty, if the chancellor finds prejudicial error, is to remain it to the board. Well, the board has not had a hearing, so what would the chancellor be remaining to the board? Absolutely nothing. So we say the federal court or the federal process is the only relief that this man can get. Okay. If we were not going to render, what would we remand to the district court? The issue of whether or not his due process rights were violated. Okay. In the pre-termination, and certainly the court dismissed the other issues because the court said it didn't have jurisdiction at this point, especially with respect to the state proceedings, we submit that the court would have authority to reinstate those as well. Thank you. Good morning, Your Honor. My name is Robert Stacy. I represent the Greenwood Public School District, Deidre Mays, Randy Clark, and Samantha Milton. This case was dismissed on a 12B6 motion, and so in response to the court's question about whether there was a state-given property right, it was pled in the complaint, and so for purposes of our 12B6 motion, we accepted that as a well-pleaded complaint to be true. Okay. If the case is ever, if it's remanded, there are issues, numerous issues to be determined about due process and other things, but since we're here on a 12B6 dismissal . . . We take it as a property interest. Yes, Your Honor. Okay. For purposes of . . . For purposes of the 12B6 as well as pleaded that it is. Okay. That is correct. So that's not an issue today. You're not conceding that for any other purposes? Yeah. Correct. Got it. But for purposes of today, it's conceded. Okay. So the issue, I think, before the court is not whether there was a due process, at this point, whether there was a due process violation, either pre-termination or post-termination. It's whether, assuming there was, or assuming there's a fact question that there was, what the proper remedy was. And district court held, and our position is that the remedy was for Dr. Green to file a statutory appeal to the Chancery Court, pursuant to Mississippi law, rather than come directly to federal court. And that's my problem, so I want to talk about that. As a practical matter, what is the Chancery Court going to look at? Let's assume he filed an appeal. What would the Chancery Court be reviewing? The statute, the appeal statute, is somewhat remedial in that it allows the Chancery Court, if it finds deficiencies in process and procedure, to remand to the board. And it says to remand for rehearing and ‑‑ Rehearing. Rehearing. Which assumes there was a hearing. A hearing. That's correct. All right. But I think the Chancery Court has some power to fashion a remedy, because the making of a record and a public hearing were not guaranteed under the previous statute. There was a right for an employee, including superintendent, to request that public hearing at which a record would be made. But it was only given if requested, and it could be waived if not requested in five days. So there was no ‑‑ even under the statute where it allowed a superintendent to request a public hearing, if he or she didn't request it or if they waived it, there was no procedure for a record to be made then either. So I would think that the Chancery Court has some leeway up on remand in fashioning what type of, whether it's a hearing or a rehearing or a meeting with the board, just to meet Loudermill requirements. But the statute says rehearing. The statute says rehearing. No question about that. I think one thing that a Chancery Court could do is illustrated by what the Chancery Court did in this case when Dr. Green, instead of filing an appeal, filed a bill for discovery, a complaint for discovery, seeking discovery into the reasons he was fired, going back to his claim that it was not for good cause. The chancellor didn't address whether the statute applied or not, and said that was maybe up to the legislature, but ordered the district to provide written reasons with documentation for Dr. Green's termination, which were provided. I think that under the statute our position would be a chancellor could look at that to determine whether there was cause or good cause in lieu of a record from a hearing, and that would be the proof at a record or at a hearing on the record. So I think the chancellor has some leeway in the remedy he or she could fashion. But you're not suggesting that a letter equals a hearing, are you? No, Your Honor. No, I'm not saying it equals a hearing. What I'm saying is even under the statute. But you're saying a chancellor could review the letter and then order a rehearing. Or the chancellor wouldn't have to review a letter. The chancellor under. . . Well, what's the record? The record would, according to you now, the record would just be this letter that said this is why you were terminated. That's the hearing. That's the first hearing. That's what was done. In this case, that was one. . . I was saying that was illustrative of what a chancellor could do. But even more important, under Section 113, in the event there's finding of prejudicial error in the proceedings, the cause could be remanding for a rehearing. I think a chancellor could say I'm remanding this for a hearing, whether it's a rehearing or not. We need to make a record so I can make a determination, I, the chancellor, of whether dismissal was for good cause. So I think the word rehearing, the statute clearly says that. But I think the chancellor could remand for a hearing. You don't think the legislature didn't know what a rehearing was. Your Honor, I don't. And I don't know. . . I don't know why. . . I don't know why some other statutory changes were not made either. But. . . Is there something to Mississippi? Go ahead and finish your but. I'm sorry. I was going to say the. . . The superintendents were carved out of the right to request a public hearing. In many cases, Ellis case, which is federal court, in Bowman, in Chester Lee cases that were cited to the district court, as a practical matter, what would happen is the districts would terminate or suspend an employee and then give them the right to a public hearing. So it's not a pre. . . It was not necessarily a pre-termination remedy. And then the employee could elect to do it or not. So what the legislature did in carving out the superintendents from that step is basically just taking one step out of the process. They didn't take away a pre-termination right because it's not a pre-termination remedy under the. . . It was not under the statute anyway. I'm sorry, Your Honor. Well, the problem. . . I meant to bring the statute, and of course I didn't. The statute talks about a terminated superintendent. Puts the words together, doesn't it? I mean, what are the actual words? Because what I'm. . . The way I read the statute is it doesn't address his point about I had a right pre-termination before. . . The statute doesn't talk about what happens before he's terminated, right? You're correct, Your Honor. What the statute says is that before being so dismissed or suspended, any licensed employee shall be notified of the charges against him. Okay. And notified of a right to a public hearing. And then that. . . Okay, then what. . . Then the next thing talks about. . . A school superintendent whose employment has been terminated. Has been terminated. So, okay. That's after he gets terminated. All right. It doesn't address his right before he gets terminated. And under the U.S. Constitution, he's got a right to a certain amount, not a big mcgilla, just a small, but a pre-termination hearing. And the statute doesn't preclude that. I agree, Your Honor. I think that you get back to the federal ladder mill requirements of some notice and some opportunity. But the district's point is, whether it's pre-termination, whether there was a violation of pre-termination. . . Which there probably was. Okay. I mean, they didn't. . . I have the impression, and maybe incorrect, that they didn't give him pre-termination statement of reasons, you know, a little something as to why we're terminating. Just said, you're gone. Your Honor. . . Is that right? I'll address that. The facts plead, and what we're going on is the facts plead and the complaint, because it's not a summary judgment. There was no evidence. Is that Dr. Green was aware that there was a specially called board meeting and the sole purpose or the sole item on the agenda was his employment. And that he was present at some part of it. And I think there was an executive session call that he may not have been present in, and that he was told he was being terminated for cause. That's what's alleged in the complaint. I think there were many other people there, and it's probably, there are probably still fact-finding missions to determine whether he was or was not. But for purposes of today, I think you've got to concede that he pled, that he was not. But his process, his remedy, if he were not provided pre-termination due process, would still be the appeal statute. The appeal statute, Section 113, is a dual remedy. It's not solely post-termination. It certainly allows post-termination review to see if there was substantial evidence to support a decision. But it also allows the court, or the Chantry court, if it determines there was a, there was prejudicial error in the proceeding. State court cases reference due process deficiencies. It has the power to remand back to the school board to fix that. And so, if there was pre-termination due process violation, Dr. Green's remedy was still to file the statutory appeal rather than go directly to federal court, which he could do, but the statute is there, and he didn't utilize the statute. And that's our position. But he'll still do it even if it's going to help him or not. Even if it's awkward because there's rehearing or not rehearing and all of that, he still has to try. Is that your position? It is, and he was not. It's odd. While the legislature accepted or carved out superintendents from the right to request a public hearing, they did not, the legislature did not carve superintendents out as a defined employee for purposes of appeal in Section 379103. And it's important. A superintendent is defined as an employee, and the reason that's important is that the appellate statute, Section 113, says that any employee aggrieved by a final decision of the school board is entitled to judicial review thereof, and it goes on. So, I don't know what the chances, it's not, it's hard for me to speculate on what the chances of an employee's, of a terminated employee are of having a chancery court reverse. But that is the, that's the mechanism that's in place, and it's a statutory remedy that was in place, and it wasn't followed in this case, and that's why the district court was correct in dismissing it for failure to state a claim. Does the Mississippi's law in this section say anything about what a hearing constitutes, such that it's always evidentiary or not? No, Your Honor, the statute simply provides that the employee be notified they're entitled to a public hearing, and then it doesn't talk about . . . It says that you can cross-examine witnesses and things, so maybe that does mean that it's got to be evidentiary. I don't know. I think it, I mean, I think it contemplates a, what I would call a formal hearing with a record and that opportunity, rather than what might muster under Loudermill, where it's just an opportunity to sit down with, you know, one or more of the board members, be advised of the charges, and have an opportunity to respond to those. So, I think it's a, it's an opportunity for a formal hearing with a record, but it was never a requirement under the statute. It was at the election of the employee, and it could also be waived, and it was not a guaranteed pre-termination remedy. And so, the legislature has just removed that step for superintendents. I think we have your argument. Thank you, Your Honor. May it please the Court. First of all, I'm kind of confused about what counsel is talking about in terms of this hearing that superintendents are entitled to. There is absolutely no hearing under Mississippi law that superintendents are now entitled to, or was entitled to at the time of the termination of Dr. Green. To begin with, if you go back to 37-9-59, it makes it perfectly clear that superintendents are no longer entitled to a hearing under EEPL. Prior to 2012, superintendents had that right. The legislature stepped in and said they are not entitled to that right. Now, the portion of EEPL that granted that right was section 37-9-109 and 37-9-111. Each of those statutes now make it clear in bold print that a superintendent is not entitled to a hearing under those statutes. Well, what was 37-9-109? What right did the superintendent have? The right to notice of the charges against the superintendent and the right to request a hearing. What were the rights under 37-9-111? The right to all the evidence, to a fixed date for the hearing, the opportunity to respond to the evidence in writing, and the opportunity to request a hearing and appear at the hearing and present witnesses. Where does it say that 37-9-11 does not apply? At the bottom of the statute, the new statute. It no longer applies to superintendents. Under provision 9. Yes, there's a provision in there that says it no longer applies to superintendents. But there's not a problem. Now, watch this now, Your Honor. The record that they talk about in 37-9-111 is a stenographic record that goes to the chancery court. A stenographic record. In other words, a court reporter is there to receive the proceeding. None of those rights exist with respect to superintendents anymore. What do you do with the fact that 37-9-113 does not take away superintendents? It does not expressly disclaim superintendents. And that's what's so strange about what the legislature did because it still identified superintendents as an employee. But it granted them absolutely no rights under EEPL. Yes, you are an employee, but you don't have any rights to a hearing under EEPL. So that once you go to 37-9-113, the record doesn't exist. So what can the court look at? The Spraglin case, the Wyther case, all say you must look at the record, the stenographic record, to decide whether or not there was substantial evidence, whether or not the decision was arbitrary and capricious. And above all, Spraglin says this. If there's a violation of the due process rights, then the record has to reveal that. Otherwise, there's nothing the chancellor can do. But why isn't that an issue for the chancellor? That's not for us. That's for the chancellor to grapple with. Because the chancellor's jurisdiction is specifically limited by section 37-9-113. Right, and it specifically says you can go to them or her with this C3C. And so you go and you say, I don't have a good record, I don't have any record, but I'm here because this is where I have to go before I can go to federal court. And I submit to you the chancellor. But wouldn't 37-9-59 say as a superintendent you're not even entitled to ask for it? That's correct, as well as 37-9-109 and 111. But you don't have to ask for a hearing. You still have to go to chancellery court. If you go to chancellery court, first of all, you're leaving a void there because federal law says this, that the superintendent is entitled to respond. They didn't give the superintendent pre or post an opportunity to respond. They walked in on Monday morning at 8 o'clock, set a hearing, one-hour notice, set a hearing, and then rendered a decision, the superintendent asked for the opportunity to appear and make a presentation. They said no. The superintendent then asked for a hearing. They said no, you're not entitled to one. You said set a hearing. My understanding is they just called a meeting. Right. He asked to appear before them. Right? Yes. But I'm saying the notice he got was for a meeting of the board, wasn't it? That's correct. All right. And he got that. This was the first day after the Christmas or New Year's break. And the court can take judicial notice. Look at your calendar. The calendar is judicial notice that January 4th, 2016 was the first. This was at 8 o'clock in the morning. School was just opening up. They walk in, make a decision, don't allow the superintendent to address the board. There was no due process here. Okay. Can I ask what do you do with the Galloway case and the Rathjen case and the Ellis case, all cited by the district court to say it doesn't matter what you could do in front of the chancery court, you still have to go there because that's what Mississippi law says. And there's nothing in those cases. Those cases are distinguished anyway because those persons actually had hearings and opportunities for hearing. Each one of them. Some of them abandoned their hearing. Mr. Green had no hearing. I think we have your argument. Yes. Thank you.